UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

EVISLANDYS BRITO,

    Petitioner,

v.                                    CASE NO. 6:10-cv-1705-Orl-31DAB

SECRETARY, DEPARTMENT
  OF CORRECTIONS, et al.,

    Respondents.
_____/

## ORDER

This case is before the Court on Petitioner's amended petition for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 5). Upon consideration of the amended petition, the Court ordered Respondents to show cause why the relief sought in the amended petition should not be granted. Thereafter, Respondents filed a response to the amended petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 11). Petitioner was provided with the opportunity to file a reply, but he failed to do so.

Petitioner alleges six claims for relief in his habeas petition: 1) trial counsel was ineffective for failing to investigate and call certain witnesses at trial; 2) trial counsel was ineffective for failing to call Gilbert Caraballo to testify at trial; 3) trial counsel was ineffective for failing to investigate the scene of the crime and location of Petitioner's home;

4) trial counsel was ineffective for failing "to present a coherent theory of defense"; 5) trial counsel was ineffective for failing "to argue specific grounds and facts during [the] motion for judgment of acquittal"; and 6) the "cumulative affect" of trial counsel's "deficiencies" entitle Petitioner to habeas relief.

## I.     *Procedural History*

Petitioner was charged by information with one count of burglary of a dwelling with an assault or battery (count one), three counts of sexual battery with a deadly weapon or physical force (counts two through four), and one count of aggravated assault with a firearm (count five)  A jury trial was held, and the trial court granted a judgment of acquittal as to count four.  The jury found Petitioner guilty as charged with regard to counts one, three, and five, and he was found guilty of the lesser included offense of battery with regard to count two. The trial court adjudicated Petitioner guilty of the crimes and sentenced him as follows:  life imprisonment as to each of counts one and two; imprisonment for a term of 51 weeks as to count three; and imprisonment for a term of five years as to count five, with all of the sentences to run concurrently. Petitioner filed a direct appeal with the Florida Fifth District Court of Appeal, which affirmed *per curiam*.

Petitioner next filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 with the state trial court, which was denied. Petitioner appealed the denial, and the state appellate court affirmed the denial *per curiam*.

## II. Legal Standards

### A. Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

3

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."[1] *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

B.      *Standard for Ineffective Assistance of Counsel*

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[2] *Id*. at 687-88. A court must

---

[1]In considering the "unreasonable application"inquiry, the Court must determine "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court. *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

[2]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

4

adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989)

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

### III. Analysis

#### A. Factual Background

Vanessa Ricci, the victim in this case, testified that she had been living in an apartment and was sleeping in her bedroom on the night of the incident. She awoke around 4:00 a.m. when she heard her bedroom door open and saw a man in her room. The

man pointed a gun at her and proceeded to sexually assault her. After the assault, he took her cellphone and dialed the number of his own cellphone so that her number would appear in his cellphone. Law enforcement was then contacted, and the victim was examined at a sexual assault treatment center. She described the perpetrator's physical description and indicated that he had been wearing a mustard-colored jacket. Ms. Ricci did not know the perpetrator, but she later identified Petitioner from a photo lineup.

A female detective pretending to be Ms. Ricci used Ms. Ricci's cellphone, called Petitioner's cellphone, and asked him to come over to her apartment. Petitioner was then seen circling the apartment complex in his vehicle and was subsequently arrested. At the time of the arrest, Petitioner was in possession of the cellphone whose number he had programmed into Ms. Ricci's cellphone. Law enforcement later searched Petitioner's residence and found a gun and a yellow jacket. Petitioner's DNA profile was found on swabs taken from Ms. Ricci's breast and a partial profile was found on the swabs of her perineal area.

Petitioner testified that he had met Ms. Ricci through another individual named "Tito." He stated that he went to Ms. Ricci's apartment on the night of the incident just to "say hello." He denied displaying a gun and, aside from a kiss, denied any sexual contact with Ms. Ricci. Petitioner also explained that the cellphone found on his person actually belonged to Tito. Ms. Ricci denied knowing anyone named Tito.

Jane Meyers testified at trial that Petitioner had entered her apartment while she was sleeping, pointed a gun at her head, sexually assaulted her, and then programmed his

cellphone number into her cellphone.

B.     *Claim One*

Petitioner states that trial counsel was ineffective for failing to investigate and call certain witnesses at trial. He contends that Moraina Rodriguez, his girlfriend, would have testified as to the location of the condominium where she and Petitioner resided; that Tito was an employee of Petitioner's and visited their home on the evening of the incident; and that Tito left his gun and jacket at their home. He contends that Kimomar Gonzalez and Yosbel Rodriguez would have testified as to the relationship between Petitioner and Tito. This claim was raised in Petitioner's Rule 3.850 motion and denied because, given the strength of the evidence presented at trial, Petitioner was unable to show prejudice.

"[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted). Hence, the "petitioner must first make a sufficient factual showing, substantiating the proposed witness testimony." *Percival v. Marshall*, No. C-93-20068 RPA, 1996 WL 107279, at *3 (N.D. Cal. March 7, 1996) (citation omitted). "Such evidence might be sworn affidavits or depositions from the potential witnesses stating to what they would have testified. The rule is that `mere conclusory allegations' are insufficient." *Id*. Petitioner has failed to present evidence of actual testimony or any affidavit of alleged testimony. Since Petitioner has not made the requisite factual showing,

7

his self-serving speculation will not sustain a claim of ineffective assistance of counsel.

Moreover, "[t]he decision whether to call a particular witness is almost always strategic, requiring a balancing of the benefits and risks of the anticipated testimony. The witness may not testify as anticipated, or the witness's demeanor or character may impress the jury unfavorably and taint the jury's perception of the accused; or the testimony, though sympathetic, may prompt jurors to draw inferences unfavorable to the accused." *Lema v. United States,* 987 F.2d 48, 54 (1st Cir. 1993) (citations omitted). Petitioner has failed to advance a persuasive argument that trial counsel's decision not to investigate or call these witnesses was unreasonable or that this decision can be construed as conduct outside the wide range of professional representation. "Reasonably competent trial counsel might well have determined that the best prospect for acquittal lay in discrediting the government's witnesses, rather than presenting additional testimony which could appear to legitimize the government's case or raise questions about the defense not previously suggested by the government's evidence." *Id.* at 54. In view of the obvious tactical risks and the limited benefits, the failure to present these witnesses did not amount to ineffective assistance of counsel.

Finally, in light of the State's evidence presented at trial, it is apparent that this testimony would not have changed the outcome of the proceedings. Therefore, Petitioner has failed to demonstrate prejudice, and the Court finds that this claim is without merit. As such, Petitioner fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in

8

denying relief on this claim.

## C. Claim Two

Petitioner asserts that trial counsel was ineffective for failing to call Gilbert Caraballo to testify at trial. He claims that Mr. Caraballo would have testified that he (Mr. Caraballo) had seen Ms. Ricci "in the company of" Petitioner on more than one occasion. This claim was raised in Petitioner's Rule 3.850 motion and was denied because this testimony would have contradicted Petitioner's testimony that he knew Ms. Ricci through his relationship with Tito.

As in claim one, Petitioner has failed to present evidence of actual testimony or any affidavit of alleged testimony. Since Petitioner has not made the requisite factual showing, his self-serving speculation will not sustain a claim of ineffective assistance of counsel. In addition, in view of the obvious tactical risks and the limited benefits, the failure to present this witness did not amount to ineffective assistance of counsel. Finally, in light of the State's evidence presented at trial, it is apparent that this testimony would not have changed the outcome of the proceedings.

The Court also notes that Petitioner testified at trial that he only knew Ms. Ricci through Tito and that Tito "was really the one that knows her." (Appendix 2, Transcript of Trial at 229.) The proposed testimony of Mr. Caraballo appears contradictory to Petitioner's trial testimony.

Under the circumstances, the state court's denial of this claim was not "contrary to, or involved an unreasonable application of, clearly established federal law" nor was it

"based on an unreasonable determination of the facts in light of the evidence." 28 U.S.C. § 2254(d).

## D.   Claim Three

Petitioner states that trial counsel was ineffective for failing to investigate the scene of the crime and location of Petitioner's home. According to Petitioner, an investigation would have revealed that the wall between the victim's apartment complex and his home was ten feet tall, which would have been impossible for anyone to climb. If Petitioner had entered the complex in any other manner, he argues that his image would have been caught in a surveillance camera. This claim was raised in Petitioner's Rule 3.850 motion and was denied because there was testimony that the wall five or six feet tall.

Petitioner's claim is refuted by the record. At trial, Detective Jason McMullen testified that the fence was five to six feet tall. (Appendix 2, Transcript of Trial at 54-55.) Consequently, Petitioner has not shown that counsel acted deficiently with regard to this matter or that he sustained prejudice. As such, Petitioner fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in denying relief on this claim.

## E.   Clam Four

Petitioner contends that trial counsel was ineffective for failing "to present a coherent theory of defense." He states that, during opening statements, his counsel argued that Petitioner knew the victim and that they had a casual relationship. However, according to Petitioner, his counsel never presented evidence in support of this argument.

10

This claim was raised in Petitioner's Rule 3.850 motion and was denied because there had been no showing of prejudice.

The record belies Petitioner's claim. As noted by Petitioner, counsel did discuss the relationship between Petitioner and the victim during opening statements. In fact, Petitioner's counsel specifically argued that Petitioner knew Ms. Ricci and that they had been together on several occasions. *Id.* at 17. Moreover, contrary to Petitioner's assertion, counsel did present evidence in support of this argument. In particular, Petitioner testified at trial that he knew Ms. Ricci and that he and Ms. Ricci "get together once in a while." *Id.* at 229. This issue was further addressed during closing argument when counsel again argued that Petitioner's testimony revealed that Ms. Ricci knew Petitioner. *Id.* at 286.

The Court finds that Petitioner's counsel did not act deficiently with regard to this matter and that, in light of the strong evidence presented by the State, there has been no showing of prejudice. As a result, Petitioner fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in denying relief on this claim.

F.    *Claim Five*

Petitioner states that trial counsel was ineffective for failing "to argue specific grounds and facts during [the] motion for judgment of acquittal." He claims that this case was based on circumstantial evidence and that counsel's argument in support of the motion for a judgment of acquittal was "bare bone" and legally insufficient. This claim was raised in Petitioner's Rule 3.850 motion and denied because there had been no showing of

prejudice.

Contrary to Petitioner's assertion, this case was not based merely on circumstantial evidence. Ms. Ricci identified Petitioner in a photo line-up. Petitioner's DNA was found on the Ms. Ricci's breast and perineal area. In addition, at the time of the arrest, Petitioner was in possession of the cellphone whose number he had programmed into Ms. Ricci's cellphone.

Petitioner's counsel argued in support of the motion for a judgment of acquittal that the State had failed to prove that Petitioner was the individual who perpetrated these offenses. *Id*. at 216. The trial court, after hearing argument from the parties, granted the motion as to count four and denied the motion as to the remaining counts.

The record reflects that Petitioner's counsel did not act deficiently with regard to this matter. Further, in light of the evidence presented by the State, there has been no showing of prejudice. Thus, Petitioner fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in denying relief on this claim.

## G.    *Claim Six*

Petitioner states that the "cumulative affect" of trial counsel's "deficiencies" entitle Petitioner to habeas relief. This claim was raised in Petitioner's Rule 3.850 motion and was denied because none of Petitioner's claim had been found to be meritorious.

In the present case, none of the alleged errors of trial counsel considered alone, approaches the threshold standard of ineffective assistance of counsel. Taken together,

their cumulative effect also falls far short of depriving Petitioner of effective assistance of counsel or a fundamentally fair trial. Therefore, Petitioner is not entitled to federal habeas relief on this "cumulative error" claim. The Court further finds that the state court's denial of this "cumulative effect" claim was not contrary to or an unreasonable application of any Supreme Court decision so as to warrant relief under the AEDPA.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Amended Petition for Writ of Habeas Corpus (Doc. No. 5) filed by Evislandys Brito is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

3. This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner has failed to make a substantial showing of the denial of a

constitutional right.³ Accordingly, a Certificate of Appealability is **DENIED** in this case.

**DONE AND ORDERED** in Chambers in Orlando, Florida, this 24thday of January, 2012.

_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies to:
OrlP-2 1/24
Counsel of Record
Evislandys Brito

---

³Pursuant to Rule 11 of the *Rules Governing Section 2254 Cases In the United States District Courts*,

> The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue. If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2). If the court denies a certificate, a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22. A motion to reconsider a denial does not extend the time to appeal.